Ralph N. WATERMEIER, Sr. and
Addie Higgins Watermeier

v.

CONTINENTAL OIL COMPANY
and Conoco Inc.

Civ. A. No. 92–4218.

United States District Court,
E.D. Louisiana.

March 30, 1993.

Camilo Kossy Salas, III, Sessions & Fishman, New Orleans, LA, for plaintiffs.

Joseph E. LeBlanc, Jr., Keene Richards Kelley, Nesser, King & LeBlanc, New Orleans, LA, Mark Zehler, Conoco Inc., Legal Dept., Houston, TX, for defendants.

## ORDER AND REASONS FOR ENTRY

CLEMENT, District Judge.

Defendants Conoco Inc., formerly known as Continental Oil Company, and Continental Oil Company (collectively, Conoco), move to dismiss two claims of Plaintiffs Ralph and Addie Watermeier (plaintiffs) for failure to state a claim upon which relief may be granted (Fed.R.Civ.P. 12(b)(6)). Finding the plaintiffs' complaint could be viewed as alleging an acknowledgement of debt that interrupts the one year prescriptive period, the court denies Conoco's motion for dismissal pursuant to Rule 12(b)(6). While the court agrees with Conoco that the facts in this case present an unusual allegation of interruption,

the court believes that resolution of this prescription issue awaits a properly supported motion for summary judgment under Fed. R.Civ.P. 56.

## A. BACKGROUND

The plaintiffs inherited land located at the intersection of Veterans Highway and Causeway Boulevard in Metarie, Louisiana. From March 1, 1956 to June 31, 1986, Conoco leased this land from Mrs. Gertrude Lear, the plaintiffs' "ancestor" (the court does not know the plaintiffs' precise relationship to Lear). During most of this period, a Conoco subsidiary operated a gas station at the site.

In 1986, Conoco determined, after conducting a preliminary environmental assessment of the site in connection with the termination of the lease, that the soil and groundwater were contaminated. According to Conoco, Lear was told of the results of this assessment immediately thereafter.[1] In any event, it is undisputed that Lear had this information by 1989.[2]

Conoco has been "cleaning up" the site since April or July 1990. This clean up is required by regulations promulgated by the Louisiana Department of Environmental Quality (DEQ). In bringing suit against Conoco, the plaintiffs contend, however, that "[a]lthough more than two years have passed, the clean up operations have not been completed and Plaintiffs have reason to believe the Property cannot and will not be completely cleaned up, ever."

Lear died on April 2, 1991, and the plaintiffs acquired ownership of the land through succession on September 3, 1991. On November 23, 1992, the plaintiffs brought this suit, which asserts three causes of action: (1) Conoco violated its obligation under the lease to restore the land; (2) Conoco is strictly liable in tort under La.Civ.Code art. 2317; and (3) Conoco operated the service station negligently in violation of La.Civ.Code art. 2315.

---

**1.** If Lear was told of the contamination in 1986, then clean up, commenced in 1989, could not have interrupted the prescriptive period. (The plaintiffs have never argued that prescription was renounced.)

**2.** Paragraph 11 of the Watermeiers' complaint states that Lear learned of the contamination in 1989.

## B. ANALYSIS

### 1. Parties' Contentions

Conoco notes that the two delictual actions are subject to a one year prescriptive period under La.Civ.Code arts. 3492 and 3493. As the plaintiffs brought suit on November 23, 1992, according to Conoco, the two delictual claims have prescribed. La.Civ.Code art. 3492 provides for a one year prescriptive period for delictual actions running from the day injury or damage is sustained. La.Civ. Code art. 3493 provides for a one year prescriptive period for immovable property running from the day the owner acquires, or should acquire, knowledge of the damage.

The plaintiffs present five arguments to counter Conoco's motion to dismiss for reason of prescription: (1) the prescriptive period was interrupted because Conoco "acknowledged" its debt to Lear when it commenced clean up; (2) the plaintiffs were lulled into not filing, which interrupts prescription under the doctrine of *contra non valentem;* (3) the contamination continues to spread, thus constituting a continuing tort; (4) the plaintiffs, the residual legatees, only recently acquired knowledge of the contamination; and (5) Conoco's settlement discussions with the land owner's attorney in June, 1990, interrupted the prescription period.

### 2. Failure to State a Claim

■ Conoco brings its motion to dismiss under Rule 12(b)(6). Rule 12(b)(6) "speaks to the failure to state a claim upon which relief can be granted and encompasses dismissal on the basis of prescription." *Washington v. Allstate,* 901 F.2d 1281, 1283 (5th Cir.1990). For the purposes of considering a motion pursuant to Rule 12(b)(6), the allegations in the plaintiffs' complaint are taken as true, and are construed in the light most favorable to the plaintiffs. *See Kaiser Aluminum v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982). Dismissal under Rule 12(b)(6) is not appropriate unless it appears to a certainty that the plaintiffs would not be entitled to relief under any set of facts that could be proven. *Conley v.*

*Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Baton Rouge Bldg & Constr. Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir. 1986). Lastly, when considering a motion under Rule 12(b)(6), this court's inquiry is limited to the content of the complaint. Wright & Miller, 5A *Federal Practice and Procedure,* § 1356, at 298 (West 1990).

As a threshold matter, the court finds that the plaintiffs' complaint can be construed as alleging an interruption of prescription. The complaint states that Lear learned in 1989 about the contamination.[3] The complaint further states: "Conoco has acknowledged causing the contamination and has undertaken responsibility for cleaning it up."[4] Thus, when viewed in the light most favorable to the plaintiffs, the complaint could be seen as alleging an acknowledgement of the debt giving rise to an interruption of the one-year prescriptive period.

### 3. Motion for Summary Judgment

■ The plaintiffs have attached documents to their supplemental opposition to Conoco's motion to dismiss. Where matters outside the pleadings are considered by the court on a motion to dismiss, the court is required under Rule 12(b) to treat the motion as one for summary judgment and to dispose of it as required by Rule 56. *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Jackson v. Procunier,* 789 F.2d 307, 310 (5th Cir.1986). Technically, therefore, the court could treat Conoco's motion as one for summary judgment.

#### a. Negotiated Settlement

The plaintiffs offer the environmental indemnification agreement, sent from Conoco to Lear on June 5, 1990, as evidence of acknowledgment. In a cover letter to this proposed indemnity agreement, Elizabeth Bunn, a Corporate Legal Assistant at Conoco, told Lear's counsel, Milton Brener, to contact another Conoco counsel, Herlinda Gonzalez, "to complete this agreement and

---

3. Plaintiffs' Complaint ¶ 11, at 2.

4. Plaintiffs' Complaint ¶ 12, at 3.

gain access needed for remediation." A letter from Gonzalez to Brener; dated June 27, 1990, indicates that, as of June 27, 1990, negotiations concerning the indemnification agreement were underway. Neither party has explained when or why these negotiations broke down.

■ The court finds that plaintiffs' argument that Conoco's efforts to negotiate settlement in 1990 constitutes a broad acknowledgement of tort liability is contrary to authority. Numerous cases hold that "efforts to settle or compromise a claim do not constitute an acknowledgement." *Washington,* 901 F.2d at 1288 (applying Louisiana law) (contractor's estimate not an acknowledgement); *see also Frederick v. Aetna Life & Casualty Co.,* 467 So.2d 600, 602 (La.App. 3d Cir.1985). As the Louisiana Supreme Court stated in *Lima v. Schmidt,* "mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims will not constitute acknowledgments." 595 So.2d 624, 634 (La.1992).

### b. Spreading Contamination

■ Louisiana law distinguishes between damages caused by continuous and discontinuous operating causes. When the operating cause of the injury is continuous, giving rise to successive damages, prescription begins to run from the day the damage was completed and the owner acquired, or should have acquired, knowledge of the damage. *Bustamento v. Tucker,* 607 So.2d 532, 537 (La.1992).

The plaintiffs assert that because the contamination "continues to spread" Conoco's conduct constitutes a "continuing" injury. Hence, the argument goes, the prescriptive period never started to run. The plaintiffs cite *Diefenthal v. Longue Management Corp.,* 561 So.2d 44, 55 (La.1990), and *Knecht*

*v. Board of Trustees,* 525 So.2d 250 (La.App. 1st 1988). Neither case is relevant. *Knecht,* stands for the proposition that there can be continuous *acknowledgment* of a liability.[5] *Diefenthal* concerns the operation of a home in continuous violation of a restrictive covenant. In any event, as Conoco points out, the plaintiffs' theory was rejected in *Mouton v. Louisiana,* 525 So.2d 1136 (La.App. 1st Cir.1988), a case involving similar facts as the instant case.[6]

### c. Remediation

The plaintiffs' central contention is that Conoco "acknowledged" its tort liability when it commenced clean up in July 1990. Conoco counters that remediation cannot be an acknowledgement of tort liability as it was mandated by DEQ regulations. In addition, Conoco points out, remediation cannot be construed as an acknowledgement of anything other than compliance with DEQ regulations.

■ When a petition shows on its face that the prescriptive period has run, the burden is on the plaintiff to prove interruption of the prescriptive period. *Lima,* 595 So.2d at 628; *Alexander v. Minnieweather,* 595 So.2d 802 (La.App. 2d Cir.1992). Where an interruption in prescription is pleaded, the plaintiff must prove the cause of the interruption. *Lima,* 595 So.2d at 628.

"Prescription is interrupted when one acknowledges the right of the person against whom he [or she] had commenced to prescribe." La.Civ.Code art. 3464. "If prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption." La.Civ.Code art. 3466.

■ An "acknowledgement" is a simple admission of liability. It is "the recognition

---

5. In *Knecht,* university employees brought an action against the university board of trustees, which abolished compensatory leave without making provision to credit or compensate employees. The court held that the university's bookkeeping, reflected on the employees paychecks, constituted an acknowledgment that interrupted prescription.

6. In *Mouton,* the landowner argued that the presence of hazardous waste on his property was

continuing tortious conduct. In other words, the tort was the existence of the oil field waste on his land, not the defendant's act of dumping the waste. The appeals court disagreed, and found that the defendant's tortious conduct was the deposit of oil field waste on the land, conduct that had ceased more than one year before plaintiff filed the suit. Plaintiff's suit was deemed prescribed.

of the creditor's right or obligation that halts the progress of prescription before it has run its course[.]" *Lima*, 595 S.2d at 631. Acknowledgement does not require a particular form or level of formality. An acknowledgement may be made orally, in writing, by partial payment, by payment of interest, or by pledge; it may be implicit or inferred from the facts and circumstances. *Id.*, at 632. A tacit acknowledgement occurs when a debtor performs *acts of reparation* or indemnity, makes an unconditional offer or payment, or lulls the creditor into believing that he will not contest liability. *Flowers v. U.S. Fidelity & Guaranty Co.*, 381 So.2d 378, 382 (La.1980). Acknowledgement may be inferred from the circumstances or from an act of the debtor that either expresses or implies that the right exists. There need not be a clear declaration of intent. *Lima*, 595 So.2d at 632–33.

 This is an unusual scenario for acknowledgement. The parties have not offered, and the court's own research has not exhumed, a case concerning acknowledgement with facts similar to these (i.e., required remediation of property). Before summary judgment on this issue is appropriate, the court believes that the facts and law must be further developed. For one, the court needs to know what DEQ requires of Conoco, and what, if anything, Conoco told Lear or the plaintiffs (i.e., the "lulled-into-inaction" theory). In addition, in a properly supported motion for summary judgment, Conoco could develop its argument that plaintiffs do not have a right to maintain these tort claims under La.Civ.Code art. 2315.1.[7]

Accordingly,

IT IS ORDERED that the motion of Defendants Conoco Inc. and Continental Oil Company for dismissal for failure to state a claim upon which relief may be granted is DENIED.

7. Defendants Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss, at 12–15.