924 So.2d 1285 (2006)
Rennice YOUNG
v.
David GREMILLION and State Farm Mutual Automobile Insurance Company.
No. 05-CA-802.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 2006.
Opinion Granting Rehearing April 10, 2006.
*1286 Patrick G. Kehoe, Jr., William P. Connick, New Orleans, Louisiana, for Plaintiff/Appellant.
David V. Batt, Shaun M. Smith, Rachel A. Meese, Lobman, Carnahan, Batt, Angelle & Nader, New Orleans, Louisiana, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA, and MARION F. EDWARDS.
JAMES L. CANNELLA, Judge.
The Plaintiff, Rennice Young (Young), appeals from the trial court ruling granting the exception of prescription filed by the Defendants, David Gremillion (Gremillion) and State Farm Mutual Automobile Insurance Company (State Farm). For the reasons which follow, we reverse and remand.
Young, involved in an automobile accident on January 31, 2004 at 7:47 p.m., was driving her Toyota Camry automobile west on West Esplanade Avenue, crossing Causeway Boulevard on a green light, when a Cheverolet Tahoe, driven by Gremillion, heading north on Causeway Boulevard, struck the driver's side door area of Young's vehicle. Young's vehicle was badly damaged and she suffered bodily injuries. The investigating officer on the scene, Brian Bonanno, prepared a report of the accident in which he stated that Gremillion advised him that, as he approached the intersection, he looked down at the floor of his vehicle, and when he looked back up the light was red and the Young vehicle was in the intersection. Gremillion further stated that he was unable to stop his vehicle because of the wet roadway and struck the Young vehicle. Young told Bonanno that she was stopped on West Esplanade, at the intersection, when her light turned from red to green and she proceeded across the intersection where she was struck by Gremillion. Following Officer Bonanno's investigation, he issued a citation to Gremillion for his failure to stop at a red light. In March of 2004, Gremillion pled guilty in traffic court to disregarding a red light. Five days after the accident, by letter and check dated February 5, 2004 sent to Young's credit union, State Farm paid off the balance of Young's loan on the vehicle. This extinguished Young's obligation to the credit union. By letter dated February 26, 2004, State Farm forwarded to Young's attorney a bill of sale for Young's totaled vehicle and a power of attorney to be signed by Young allowing State Farm to *1287 secure legal title to the vehicle. The letter advised that upon receipt of the signed documents, State Farm would pay Young her portion of the value of the vehicle ($3110.49) in addition to the payment to the credit union.
Young filed suit on February 4, 2005, more than a year after the January 31, 2004 accident. On March 7, 2005, the Defendants filed an exception of prescription. The Defendants argued that, since the suit was filed more than a year after the date of the accident, the action had prescribed. Young filed an opposition to the exception with an attached affidavit, arguing that prescription had been interrupted by the Defendants' acknowledgment of liability when State Farm unconditionally made a partial payment on Young's claim on February 5, 2004 to Young's credit union and State Farm's agent advised Young that liability was not being contested. Following a hearing, the trial court took the matter under advisement and, on June 13, 2005, rendered a judgment granting the exception. It is from this ruling that Young appeals.
On appeal, as she did in the trial court, Young argues that the running of prescription was interrupted when State Farm acknowledged liability by making an unconditional partial payment on her claim by paying off her debt at her credit union. Thus, she argues, that her suit, filed less than a year after the interruption of prescription, was timely and the trial court erred in granting the defense exception of prescription.
The Defendants argue on appeal, as they did at trial, that under La. R.S. 22:661, payment of property damage is not an acknowledgement of liability which interrupts the running of prescription. Further, the defense argues that because La. R.S. 22:658 and the jurisprudence interpreting that article require a McDill[1] tender within 30 days of satisfactory proof of loss, such payments are excepted from being considered admissions of liability that would interrupt prescription.
Young notes that the fallacy in the defense argument comes from an overbroad, misunderstanding of the law and cases. Young concedes that the defense is correct that a settlement of a property damage claim may not be considered as an admission of liability under La. R.S. 22:661. However, in the instant case there was no settlement of the property damage claim but rather an unconditional payment by State Farm, made without a release, of the property damage part of Young's claim. In the case of an unconditional payment of damages, as distinguished from a settlement, the payment does constitute an admission of liability or acknowledgement that interrupts prescription. In other words, Young argues that whether the payment of property damages by the insurer constitutes an admission of liability that interrupts the running of prescription turns on whether the payment was part of a settlement or an unconditional payment of part of the claim.
The law on liberative prescription is well settled and not in dispute by either party. In Louisiana, tort actions generally prescribe one year from the date the injury or damage is sustained. La. C.C. 3492; Gary v. Camden Fire Ins. Co., 96-0055 (La.7/2/96), 676 So.2d 553, 555. Although the party pleading prescription ordinarily has the burden of proof, when the petition reveals on its face that prescription has run, the burden shifts to the *1288 plaintiff to show that prescription was either suspended, interrupted, or renounced. Lima v. Schmidt, 595 So.2d 624, 628 (La. 1992). Pursuant to La. C.C. art. 3464, prescription which has not yet accrued can be interrupted by the debtor's acknowledgment of the right of the person against whom he had commenced to prescribe. Landor v. Allstate Ins. Co., 571 So.2d 843, (La.App. 3rd Cir.1990), writs denied, 575 So.2d 375 (La.1991). An acknowledgment can be oral, in writing, formal, informal, express, or tacit. See Comments, La. C.C. art. 3464; Flowers v. U.S. Fidelity & Guaranty Co., 381 So.2d 378 (La.1979). Interruption of prescription for an unliquidated claim for damages can be accomplished by a tacit acknowledgment by the debtor. Flowers, supra.
In Flowers, the Supreme Court expressly considered what acts constituted an "acknowledgment" sufficient to interrupt prescription. The Court quoted from several doctrinal writings, including Baudry-Lacantinerie & Tissier who observed:
Acknowledgment interruptive of prescription results from any act or fact which contains or implies the admission of the existence of the right. It can be express or tacit. When express, it is not subject to any particular form. It can be verbal or in writing.
5 Civil Law Translations, Baudry-Lacantinerie & Tissier, Prescription, s 529, p. 261.
The Court also looked at writings from Aubry and Rau wherein they found:
The acknowledgment with the interruptive effect may be express or tacit. No specific form is prescribed for the express acknowledgment; it may be by regular mail or even orally. Tacit acknowledgment results from any action which amounts to an admission of the creditor's or owner's right, for instance the payment of a bill as debtor; payment of a portion of the debt, interests or arrears by the debtor or his agent; a request for a postponement of a payment; and, a fortiori, the payment of the amount due by the agent of the debtor. The same would be true of an offer to pay the damages caused by a tort, made by the defendant in the course of the trial, or of an actual act of reparation or indemnity. (Emphasis added)
2 Civil Law Translations, Aubry & Rau, Property, s 215, No. 304, p. 344 (1966).
The Court in Flowers concluded that:
[A]cknowledgment sufficient to interrupt prescription may be made verbally, in writing, by partial payment, by payment of interest or by pledge, or in other ways; and that it may be implicit or it may be inferred from the facts and circumstances. (Emphasis added.)
Thereafter, in Lima v. Schmidt, 595 So.2d 624 (La.1992) the Supreme Court again considered the question of what constituted an acknowledgment sufficient to interrupt prescription. The Court in Lima quoted approvingly from Flowers and went further in observing:
Aubry and Rau also comment that acknowledgment may result from "real, or even verbal offers of payment which were not accepted, provided that in either case the offer was unconditional and not an offer to settle the claimed debt." Similarly, Carbonnier comments that "acknowledgment may be merely tacit. It can result from any attitude of the debtor which implies an unequivocal admission of the creditor's right." 5 Civil Law Translations, J. Carbonnier, Notes on Liberative Prescription, pp. 465-66. See also 2 M. Planiol, Treatise on the Civil Law, §§ 665 et seq. (La.St. L.Inst.Trans.1959).
The Lima Court went on to hold that:

*1289 A tacit acknowledgment occurs when a debtor performs acts of reparation or indemnity, makes an unconditional offer or payment, or lulls the creditor into believing he will not contest liability. Conversely, mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims will not constitute acknowledgments. (Emphasis added.)
Clearly, considering the historical doctrinal writings and Supreme Court pronouncements, it has been determined that one form of acknowledgment that will interrupt the running of prescription is the tacit acknowledgment resulting when the debtor makes an unconditional payment of a portion of the debt, thereby acknowledging the creditor's right.
In considering the facts of this case under these interpretive principles we are further guided by public policy dictates holding that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished. Thus, of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted. Lima, supra.
The defense acknowledges that there is an apparent split in the circuits on the issue of whether payment of a plaintiff's property damages constitutes an acknowledgment of liability that interrupts prescription. It has been argued that Compton v. St Paul Fire and Marine Ins. Co., 01-386 (La. App 3rd Cir. 10/3/01), 796 So.2d 896 and Landor v. Allstate, 571 So.2d 843 (La.App. 3rd Cir.1990), writs denied, 575 So.2d 375 (La.1991) evidence the Third Circuit position that payment of an injured motorist's property damage claim interrupts the running of prescription. And, the cases of Rosen v. State Farm Mut. Auto. Ins. Co., 03-1744 (La. App. 4th Cir.3/17/04), 870 So.2d 1057, writ denied, 04-0964 (La.6/4/04), 876 So.2d 92 and Waller v. Stuckey, 613 So.2d 643 (La. App. 2nd Cir.1993), writ denied, 618 So.2d 409 (La.1993) represent the contrary position by the Fourth and Second Circuits, respectively. State Farm filed a post-argument brief in this case, citing Bealer v. Vancourt, 05-0296 (La.App. 5th Cir.11/29/05), 917 So.2d 1164, as a statement by this Court agreeing with the Second and Fourth Circuits. State Farm, of course, argues that the latter cases are correct and support their position, that payment of property damages does not constitute an acknowledgment that interrupts prescription.
We find that proper analysis of the issue is affected by certain distinguishing facts which are sometimes overlooked. The question presented under the facts of this case is whether, in a case of apparently clear liability, an unconditional payment by the tortfeasor's insurer of the injured motorist's property damage, which was not part of a settlement, constitutes an acknowledgment that interrupts the running of prescription. The distinguishing facts in the cited cases and statutes are whether the property damage payment was an unconditional payment or a settlement and whether it was payment to a third party or an insured.
State Farm relies on La. R.S. 22:661, as well as the Second and Fourth Circuit cases cited above, in support of its contention that payment of property damage does not serve as an acknowledgement of liability that interrupts prescription. La. R.S. 22:661 provides:
No settlement made under a motor vehicle liability insurance policy of a claim against any insured thereunder arising from any accident or other event insured against for damage to or destruction of property owned by another person shall be construed as an admission *1290 of liability by the insured, or the insurer's recognition of such liability, with respect to any other claim arising from the same accident or event. (Emphasis provided.)
In looking at the clear and unambiguous wording of the statute, La. R.S. 22:661 only applies to settlements in declaring that "no settlement" for property damage shall be construed as an admission of liability. The statute makes no mention of unconditional payments of property damage claims and is, therefore, not applicable to them.
Likewise, State Farms reliance on Waller v. Stuckey, supra, from the Second Circuit, is misplaced. Waller involved the payment of property damage as part of a settlement, which would be controlled by La. R.S. 22:661 and would not be construed as an acknowledgment of liability. The facts in Waller, specifically that the property damage payment was part of a settlement and not, as here, an unconditional payment, renders the case distinguishable from the instant one.
The dispositive distinctions we note here have been precisely annunciated by our Third Circuit brethren in Compton v. St. Paul Fire and Marine Ins. Co., 01-0386 (La.App. 3rd Cir 10/3/01), 796 So.2d 896. In Compton, the court observed:
The Defendant relies on Collins v. Capital Valve and Fitting Co., 409 So.2d 579 (La.1982) and Alexander v. Minnieweather, 595 So.2d 802 (La.App. 2nd Cir.1992). These cases are distinguishable. They considered the effect of payment of property damage claims pursuant to a transaction and compromise  an agreement between two or more persons, each making reciprocal concessions, in order to prevent or end a lawsuit. A compromise did not occur here, as St. Paul paid the full value of Ms. Compton's totaled truck, while she made no concession in return. Furthermore, any compromise agreement must be in writing or read in open court under Louisiana Civil Code Article 3071. There is no release or compromise agreement in the record before this court. Therefore, Collins and Alexander lend no support to the Defendant's position.
The Defendant relies on Louisiana Revised Statute 22:661 for its argument that payment of property damages is legislatively permitted without being an admission of liability and that, therefore, such payment could not serve as an acknowledgment. However, Louisiana Revised Statute 22:661 does not state that no payment shall be construed as an admission of liability by the insured; it states that no settlement shall be construed as an admission. A settlement and a payment are two distinct things. Louisiana jurisprudence has consistently equated a settlement with a transaction or compromise. Therefore, settlements are governed by the civil code articles on transaction and compromise, requiring a meeting of the minds and reciprocal concessions, as well as the form requirements discussed above. Here, St. Paul simply paid Ms. Compton for her property damage and wrecker expenses. There was no settlement as envisioned by Louisiana Revised Statute 22:661, and therefore, the statute does not apply. (Footnotes omitted.)
State Farm also argues that since La. 22:658 requires the insurer to make a McDill tender, an unconditional tender of damages upon satisfactory proof of loss, it cannot be concluded that such a tender, required by law, can serve as an acknowledgment of liability and interrupt prescription. While State Farm may have a valid argument in the proper case where the principles it is arguing are applicable, they *1291 are not applicable here. La. 22:658 provides in pertinent part:
A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
(2) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any third party property damage claim and of any reasonable medical expenses claim due any bona fide third party claimant within thirty days after written agreement of settlement of the claim from any third party claimant.
(3) Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and of a claim for reasonable medical expenses within fourteen days after notification of loss by the claimant. In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220.
(4) All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim. (Emphasis added.)
The only requirements in the statute applicable to third party claims, as is the claim in this case, are a requirement to timely offer to settle a property damage claim and a requirement to pay a third party property damage claim within thirty days following settlement. Compliance with the statute, as to third party claims, is only mandated as part of a settlement. Had the payment been made as part of a settlement as required by statute, it would not be deemed an acknowledgment of liability under the dictates of La. R.S. 22:661 and the jurisprudence. Collins v. Capital Valve and Fitting Co., 409 So.2d 579 (La. 1982). The unconditional tender required by McDill is only mandated under part A between the insurer and its insured, as in the case of an uninsured/underinsured motorist claim asserted by the insured against his own insurance company. That is not applicable under the facts of this case. Here, State Farm was not statutorily required to make an unconditional payment of Young's property damages without the payment being part of a settlement. It is precisely the fact that State Farm made a voluntary and unilateral choice to make an unconditional payment of part of Young's damages that renders it an act of tacit acknowledgment of liability.
Finally, we note one other distinction among the cases that is sometimes overlooked. In Lima v. Schmidt, supra, the Supreme Court, defining tacit acknowledgment, stated that "[a] tacit acknowledgment occurs when a debtor performs acts of reparation or indemnity, makes an unconditional offer or payment or lulls the creditor into believing he will not contest liability." The Supreme Court used the disjunctive "or" annunciating distinctly different examples of tacit acknowledgment. In reviewing the prior jurisprudence in this area, we note that the courts have sometimes missed this distinction. Rather than viewing an unconditional payment of property damages as a separate and distinct act of tacit acknowledgment, as provided by the Supreme Court in Lima, they have combined the unconditional payment *1292 with a "lulling" analysis and reviewed the facts to determine if, overall, the creditor was lulled into believing that the debtor would not contest liability, See. Rosen v. State Farm Jut. Auto. Ins. Co., 03-1744 (La.App. 4th Cir.3/17/04), 870 So.2d 1057 (where the payment of property damages was erroneously disregarded and the court analyzed the case under the "lulling" theory.)
State Farm, in post argument brief, cited this Court to the recent case of Bealer v. Vancourt, supra. In Bealer, the Court noted that the insurance company wrote the claimant two separate letters advising her that she had one year from the date of the accident to settle all claims and that the only way to extend that time period was to file suit. Based on these facts, the Court concluded that the plaintiff had not met her burden of proving that she had been lulled into believing that the insurer would pay for her injuries without her having to file suit. In so holding, the Court also stated that it would not consider the payment of her property damages as an acknowledgment of liability, expressly choosing to follow Waller. As noted above, the Waller case involved the payment of property damages in conjunction with a settlement. In its opinion the Court in Bealer did not provide sufficient facts for us to determine whether a settlement was involved or whether the property damage payment was unconditional. Since Bealer relied on Waller, which was a settlement case, and we have no facts to indicate that Bealer did not involve a settlement, we find it likely that a settlement was involved, and that it is thus distinguishable from this case. Therefore, we do not find it controlling and decline to follow it.
In considering the case before us in light of the foregoing, we find that Young suffered damages as a result of the accident in the form of property damage, medical expenses, personal injury and otherwise, all of which arose from the same cause of action, the automobile accident that occurred on January 31, 2004. Her property damage claim was merely one element of her total damage claim. Liability for this accident, based on the statements by Gremillion at the scene, the police report, Officer Bonanno's deposition and the guilty plea by Gremillion to disregarding a red light, is clear. State Farm voluntarily and unconditionally paid a part of Young's damages by check dated February 5, 2004 to Young's credit union to pay off her loan on her automobile that was totaled in the accident. No release was requested and the payment was not part of a settlement of any kind. Insurance companies are not in the habit of giving money to people when they are not liable to do so and Young's affidavit establishes that, stating that State Farm advised her that they were accepting responsibility for the accident. Thus, considering that the burden of proof was on Young to prove that prescription was interrupted, we find that she met that burden under the facts here, where the property damage payment was voluntary and unconditional, it was made by State Farm to the third party injured motorist on behalf of its insured, and it was not part of a settlement. This unconditional payment by State Farm of part of Young's damages was a tacit acknowledgment of Young's rights and/or, conversely, State Farm's liability for the acts of their insured, Gremillion. This tacit acknowledgment of liability interrupted the prescriptive period running against Young's claim. Following that interruption, prescription began to run anew. La. C.C. art. 3466. This, Young had until February 5, 2005 to timely file her lawsuit and she did timely file it on February 4, 2005. Therefore, we find that the trial court erred in granting the exception of prescription.
*1293 Accordingly, based on the foregoing, the ruling by the trial court granting the exception of prescription by State Farm is reversed and the case is remanded for further proceedings consistent with this opinion. Costs are assessed against State Farm.

REVERSED AND REMANDED.

REHEARING GRANTED IN PART FOR CLARIFICATION
In its rehearing application, State Farm expressed concern that certain statements in the opinion could be construed as factual findings that might adversely affect its case at trial. We granted this rehearing in part solely for the purpose of clarifying any confusion in that regard. Any statements made in the opinion relative to the facts of the case were based on and intended only to reflect the allegations in the petition and other record evidence for the purpose of considering the exception of prescription and were in no way intended to be binding factual findings that would affect the trial of this matter on remand. As in any case, all alleged facts must be proven at trial by competent and admissible evidence and nothing in the opinion should be construed as a binding determination of the facts in this case. In all other respects, we find that the rehearing application lacks merit[1] and deny it.
NOTES
[1] An unconditional tender of policy benefits upon satisfactory proof of loss by the insurer to its insured is commonly referred to as a McDill tender, from the case McDill v. Utica, 475 So.2d 1085 (La.1985).
[1] We note that appellate briefs are not part of the record on appeal, and the appellate court has no authority to consider on appeal facts referred to in appellate briefs, if those facts are not in the record on appeal. Barrois v. Wal-Mart Stores, Inc., 97-636 (La.App. 5th Cir. 11/25/97), 703 So.2d 798. Consideration of a prior case as precedent is limited to the appellate opinion.